IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DAVID GRAY, | CASE NO. 1:20-CV-00953 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| RICHARD HAMILTON, et al., | |
| **Defendants.** | MEMORANDUM OF OPINION AND ORDER |

Currently pending is the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by Defendants Richard Hamilton, individually and as Administrator of the Estate of Kelly M. Motta, and Tracy Motta-Hamilton. (Doc. No. 3.) Plaintiff David Gray filed a Memorandum in Opposition on June 22, 2020. (Doc. No. 4.) Plaintiff thereafter filed a Motion for Default Judgment against Defendants Hamilton, in his capacity as Administrator, and Motta-Hamilton. (Doc. No. 9.) Hamilton as Administrator and Motta-Hamilton filed a response opposing Plaintiff's Motion for Default Judgment. (Doc. No. 10.)

For the following reasons, Defendants' Motion to Dismiss (Doc. No. 3) is GRANTED. Plaintiff's Motion for Default Judgment (Doc. No. 9) is DENIED.

**I. Procedural History**

On May 1, 2020, Plaintiff David Gray (hereinafter "Plaintiff" or Gray) filed a Complaint against the following Defendants: (1) Richard Hamilton, in his individual capacity ("Hamilton"), (2) Richard Hamilton, in his capacity as Administrator of the Estate of Kelly M. Motta ("the Estate"), and (3) Tracy Motta-Hamilton ("Motta-Hamilton"). Therein, Gray asserts three state law claims: malicious prosecution, conversion, and conspiracy for conversion. (Doc. No. 1 at ¶¶ 29-48.) He

asserts his malicious prosecution claim against Hamilton and the Estate ("Malicious Prosecution Defendants"). He asserts his conversion and conspiracy for conversion claims against Hamilton and Motta-Hamilton ("Conversion Defendants"). Gray's claims arise out of a dispute over the handling of the Estate of his ex-wife, Kelly M. Motta ("the Decedent" or Motta). (*Id*. at ¶¶ 5-28.) The Complaint seeks compensatory and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs. (*Id*. at PageID# 6.)

Defendants filed a Motion to Dismiss on May 28, 2020. (Doc. No. 3.) Gray filed a Memorandum in Opposition on June 22, 2020. (Doc. No. 4.) Defendants did not file a Reply in Support of their Motion to Dismiss.

On July 21, 2020, Gray filed a Motion for Default Judgment against Motta-Hamilton and the Estate. (Doc. No. 8.) On July 22, 2020, Motta-Hamilton and the Estate filed a Response to Gray's Motion for Default Judgment. (Doc. No. 9.) Plaintiff did not file a Reply.

Thus, the parties' Motions are now ripe and ready for resolution.

## II. Factual Allegations

The Complaint contains the following factual allegations. Gray lives in Massachusetts, where he works as a "financial services executive." (Doc. No. 1 at ¶ 1.) Gray was previously married to Decedent; on January 29, 2015, the Medina County Domestic Relations Court entered a Judgment Entry of Divorce, which included a Marital Separation Agreement, ending Gray's and Decedent's marriage. (*Id.* at ¶ 5.) Under the Marital Separation Agreement, Gray paid Decedent $6,000 per month in spousal support; the Agreement would terminate upon Decedent's death. (*Id.* at ¶¶ 6, 8-9.)

Decedent passed away in Mansfield, Ohio on February 5, 2018, sometime around 1:45 p.m. (*Id.* at ¶ 7). Approximately 90 minutes after her death, the February 2018 spousal support check "was

deposited at a KeyBank branch by one or both of the Conversion Defendants." (*Id.* at ¶ 12.) The check bears an endorsement that purports to be Decedent's signature, although Hamilton admitted in a November 14, 2019 deposition that either he or Motta-Hamilton "deposited the check after Decedent's death" into Decedent's account. (*Id.* at ¶ 13.) Gray alleges that the Conversion Defendants had direct access to Decedent's account and one or both stood to benefit from these funds as beneficiaries of Decedent's estate. (*Id.* at ¶14.) At the time the check was deposited, neither Conversion Defendant had power of attorney for Decedent, nor was the Estate yet established, nor was Hamilton yet appointed as administrator of the Estate. (*Id.* at ¶¶ 16, 17.) The Conversion Defendants refused to return the balance of the spousal support check to Gray following Decedent's death. (*Id.* at ¶ 19.) Gray alleges the portion of the check intended to cover February 6 through February 28, 2018, had Decedent lived, comprises the "Converted Funds." (*Id.*)

On March 12, 2018, Decedent's estate opened in Richland County Probate Court. (*Id.* at ¶ 20.) Hamilton was appointed administrator of the Estate. (*Id.*) On January 18, 2019, the Malicious Prosecution Defendants filed a Complaint for Concealment or Embezzlement of Assets against Gray in Richland County Probate Court. (*Id.* at ¶ 21.) This Embezzlement Action arose under § 2109.50. (*Id.*) Gray alleges that "[s]aid Embezzlement Action was criminal in nature." (*Id.* at ¶ 22.) In the Embezzlement Action, the Malicious Prosecution Defendants alleged that Gray "embezzled and concealed certain assets" from Decedent, including "non-qualified stock options, restricted stock units, [a] Charles Schwab 401k account, [a] Charles Schwab rollover IRA[,] and a condominium property in Hawaii, among other items." (*Id.* at ¶ 23.)

On April 15, 2019, the Malicious Prosecution Defendants also filed a "Motion to Show Cause/Contempt," as well as a Motion for Attorney Fees "in the Divorce case." (*Id.* at ¶ 24.)

According to Gray, the Malicious Prosecution Defendants made the same allegations against him as they did in the Embezzlement Action. (*Id.*)

On July 3, 2019, the Malicious Prosecution Defendants "voluntarily dismissed" the Show Cause action in the divorce case. (*Id.* at ¶ 25.) On July 8, 2019, the Malicious Prosecution Defendants also "voluntarily dismissed" the Embezzlement Action. (*Id.* at ¶ 26.)

### III.    Standard of Review

Defendants move for dismissal on the basis of both failure to state a claim under Fed. R. Civ. P. 12(b)(6), and lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

#### A.  Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

4

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

### B. Fed. R. Civ. P. 12(b)(1)

The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County*, 847 F.3d 812, 816–17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[ ] the allegations in the complaint as true." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th

Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME, Local 11*, 397 F.Supp.3d 1076, 1081-1082 (S.D. Ohio 2019).

A factual attack, on the other hand, "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church*, 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330). The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**IV.**     **Analysis**

    **A.**     **Plaintiff's Motion for Default Judgment**

As an initial matter, Plaintiff's Motion for Default Judgment (Doc. No. 8) is not well-taken. In his Motion, Gray argues that he is entitled to Default Judgment with respect to his claims against the Estate and Motta-Hamilton because Defendants' attorney inadvertently listed only Hamilton in the signature block on the Motion to Dismiss. (*Id.*; Doc. No. 3 at PageID# 16.) The Court is unpersuaded.

First, Gray failed to move for an entry of default prior to filing his Motion for Default Judgment, in contravention of Fed. R. Civ. P. 55. Even if Gray's Motion had merit, he failed to follow well-established federal civil procedure for entering default prior to moving for a default judgment. Second, Defendants' case caption ("Richard Hamilton et al.") and use of plural "Defendants" throughout the Motion make it clear that Hamilton, the Estate, and Motta-Hamilton moved with equal force to dismiss Plaintiff's Complaint, minor typo aside. Third, Gray clearly

6

responded "in Opposition to *Defendants'* Motion to Dismiss (the 'Defendants' Motion')" and only ever used the plural "Defendants" in his Memorandum in Opposition. (Doc. No. 4, *passim*.) Gray's Motion for Default Judgment is denied.

### B.     Malicious Prosecution Claim (Count I)

Count I of Plaintiff's Complaint sets forth a claim for malicious criminal prosecution under Ohio law. (Doc. No. 1 at ¶¶ 29-37.) Specifically, the Complaint alleges that the Malicious Prosecution Defendants "instituted the Embezzlement Action" under Ohio Rev. Code § 2109.50 with the malicious intent "to harm Gray personally and in his profession as a financial services executive and a FINRA-registered representative." (*Id.* at ¶¶ 30-31.) Gray alleges that there was no probable cause to institute the action. (*Id.* at ¶ 32.) Gray further alleges that both the July 3, 2019 and July 8, 2019 dismissals were voluntary; Gray alleges that this "double dismissal" resulted in a dismissal of the Embezzlement Action in his favor per Ohio R. Civ. P. 41(A)(1)(a). (*Id.* at ¶ 33.) Further, Gray alleges that, as a result of the filing of the Embezzlement Action, "certain of Gray's property was not accessible to Gray and was effectively seized during the course of the Embezzlement Action instituted by the Malicious Prosecution Defendants." (*Id.* at ¶ 34.) Additionally, Gray alleges that "[t]he Embezzlement Action was criminal in nature." (*Id.* at ¶¶ 22, 35.) He alleges that he has suffered damages greater than $75,000 as a result of the alleged malicious prosecution.

Defendants argue that Plaintiff's malicious prosecution claim should be dismissed for failing to state a claim of malicious prosecution. (Doc. No. 3 at PageID# 13-14.) First, Defendants argue that Gray fails to successfully plead a claim of malicious criminal prosecution because proceedings under § 2109.50 are civil, not criminal, in nature. (*Id.* at PageID# 14.) Defendants argue that there is no support in the law "for founding an action for malicious criminal prosecution upon a civil action

that is 'criminal in nature' . . . ." (*Id.*) Therefore, Defendants argue, Plaintiff's claim is correctly characterized as malicious civil prosecution. (*Id.*)

Second, Defendants argue that Gray cannot successfully plead a claim of malicious civil prosecution because Gray fails to allege that he suffered a "seizure" with any particularity. (*Id.* at PageID# 15.) Defendants argue that Gray fails to identify any of his property that was seized, or how the Probate Court restricted Gray's access to his property. (*Id.*) Further, Defendants argue that Gray's allegation that his property was "effectively seized" is not an allegation of seizure. (*Id.*) Defendants argue that Gray only alleges his property was "effectively seized" in an "attempt to bootstrap the facts of this case into a cause of action that it does not fit." (*Id.*)

In his Memorandum in Opposition, Gray argues that "[e]very aspect of R.C. 2109.50 is characterized by the Ohio Supreme Court and uniformly by Ohio appellate courts as criminal." (Doc. No. 4 at PageID# 22.) Gray argues that a proceeding for the discovery of concealed or embezzled assets brought under § 2109.50 is "quasi-criminal in nature" and that the proceeding "echoes criminal prosecution." (*Id.* at PageID# 23.) He argues that proceedings under § 2109.50 are reserved for "wrongdoing of criminal magnitude" involving wrongful or culpable conduct by the accused. (*Id.*) He also argues that the statute is criminal in nature because it requires probate courts to find the accused either guilty or not guilty of a charge of wrongdoing in an inquisitorial proceeding. (*Id.*) Further, Gray argues that the statute is criminal in nature because it imposes a ten percent penalty if the accused is found guilty. (*Id.*)

Gray also argues that he suffered the exact harm the Ohio Supreme Court recognized results in malicious criminal prosecution cases—damage to dignity and reputation by false accusation of a

8

crime—and therefore Gray's claim is more akin to one of malicious criminal prosecution, rather than malicious civil prosecution. (*Id.* at PageID# 25.)

Ohio law sets forth three elements of the tort of malicious criminal prosecution: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. General Motors Corp.*, 53 Ohio St.3d 142, 146, 559 N.E.2d 732, 736 (1990). The tort of malicious civil prosecution incorporates a fourth element, "seizure of plaintiff's person or property." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 269, 662 N.E.2d 9, 13 (1996). In *Trussell*, the Ohio Supreme Court eliminated the seizure or arrest requirement for claims of malicious criminal prosecution, reasoning that the "tort of malicious criminal prosecution compensates the plaintiff for the damage to dignity and reputation caused by false accusation of a crime." *Trussell*, 53 Ohio St.3d at 145. Unlike in cases of malicious civil prosecution, "the victim of false criminal charges does not have the remedies provided by Civ.R. 11." *Id.* In *Robb*, the Ohio Supreme Court declined to eliminate the seizure requirement for claims of malicious civil prosecution, reasoning that victims of malicious civil prosecution do not suffer the same stigma as wrongly accused criminal defendants. *Robb*, 75 Ohio St.3d at 269. The court reasoned that civil litigants have other options for dispatching meritless claims, including those established under Ohio R. Civ. P. 11 and 12. *Id.* at 270.

Gray alleges that he suffered malicious criminal prosecution when the Malicious Prosecution Defendants filed a Complaint for Concealment or Embezzlement of Assets against Gray under § 2109.50 in Richland County Probate Court on January 8, 2019. (Doc. No. 1 at ¶¶ 21, 29-37.) Thus, before this Court determines whether Gray has sufficiently pled his claim for malicious prosecution, the Court must first determine whether there was an underlying criminal prosecution. To that end,

the Court must determine whether a proceeding under Ohio Rev. Code § 2109.50 is criminal or civil in nature.

Section 2109.50 provides for proceedings in probate court when an interested party believes estate assets have been concealed and/or embezzled. "R.C. 2109.50 allows any person 'interested in the estate' to file in the county probate court with jurisdiction over the estate a complaint seeking the return of any 'moneys, personal property, or choses in action,' believed to belong to the estate that the claimant suspects to have been 'concealed, embezzled, or conveyed away or of being or having been in the possession of' the individual named in the complaint. The respondent is compelled to appear before the probate court 'to be examined, on oath, touching the matter of the complaint.' R.C. 2109.50. The probate court, either by jury or bench, must make a finding of guilty or not guilty and, if guilty, assess damages or order the return of the property and impose sanctions, including a ten percent penalty. R.C. 2109.52." *Lance v. Boldman*, 93 N.E.3d 1013, 1022 (Ohio App. 9th Dist. 2018). As Gray (frequently) notes, Ohio courts describe proceedings under § 2109.50 as "quasi-criminal." *Id.*; *see also, e.g., Goodrich v. Anderson*, 136 Ohio St. 509, 512, 26 N.E.2d 1016, 1018 (1940); *In re Fife's Estate*, 164 Ohio St. 449, 453, 132 N.E.2d 185, 188 (1956); *Ukrainiec v. Batz*, 493 N.E.2d 1368, 1370 (Ohio App. 9th Dist.1982); *Wozniak v. Wozniak*, 629 N.E.2d 500, 507 (Ohio App. 9th Dist. 1993); *State v. Harmon*, 72 N.E.3d 704, 710 (Ohio App. 5th Dist. 2017). A complainant under § 2109.50 must prove by a preponderance of the evidence that the respondent concealed, embezzled, or conveyed estate assets. *In re Woods' Estate*, 167 N.E.2d 122, 125 (Ohio App. 10th Dist. 1959). The laws governing civil actions control § 2109.50 proceedings. *Wozniak*, 629 N.E.3d at 411.

> Ohio courts recognize that the statutory purpose of Ohio Rev. Code § 2109.50 is not to furnish a substitute either for criminal proceedings for embezzlement or for a civil suit to recover judgment for money owing to an executor of an estate, but rather to

10

> provide a speedy and effective method for the probate court to discover assets belonging to the estate of a decedent and to promptly secure same for the purpose of administration.

*Harmon*, 72 N.E.3d at 710 (quoting *Leonard v. State, ex rel. Scott*, 3 Ohio App. 313, 314-15 (1st Dist. 1914) (interpreting former Gen. Code 10673)).  Thus, Ohio courts classify § 2109.50 proceedings as "inquisitorial discovery proceeding[s]."  *Pirock v. Crain*, --- N.E.3d ---, 2020 WL 1136065 (Ohio App. 5th Dist. 2020); *see also, e.g., Fife*, 164 Ohio St. at 453 (a § 2109.50 proceeding for "the discovery of concealed or embezzled assets of an estate is a special statutory proceeding of a summary and inquisitorial character . . . ." ).

While Ohio courts describe § 2109.50 proceedings as "quasi-criminal," they explicitly do not characterize these proceedings as *actually* criminal.  "Even though a proceeding under R.C. 2109.50 is *quasi*-criminal in nature, it does not involve the litigation of a criminal act."  *Wozniak*, 629 N.E.2d at 411 (internal citations omitted; emphasis in original).  Instead, Ohio courts characterize the § 2109.50 proceedings as "civil in character and the laws governing a civil action control."  *Id.*; *see also In re Howard's Estate*, 72 N.E.2d 502, 507-08 (Ohio App. 2d Dist. 1947) ("While the proceeding may be quasi criminal in character, in our judgment this statute now provides for litigating a matter which does not involve a criminal act, but which carries with it more of the aspect of a civil than a criminal proceeding.").

It is apparent from reviewing the relevant Ohio case law that § 2109.50 proceedings share a few characteristics with criminal actions, but that they have more in common with civil actions.  *See, e.g., Harmon*, 72 N.E.3d 704 (after thorough analysis of § 2109.50 proceedings, holding that a §2109.50 action was not a criminal action, nor did the statutory ten percent fine imposed against defendants transform § 2109.50 action into criminal action).  Ultimately, it would be incorrect to

11

classify § 2109.50 proceedings as criminal actions for the purposes of establishing malicious prosecution claims and the Court declines to do so here.

Gray urges the Court that Ohio law is "uniform" and "clear" that § 2109.50 proceedings are criminal, not civil. Gray overstates the state of Ohio case law. Gray's entire argument is predicated on the ubiquity of the "quasi-criminal" description found throughout the case law. However, Gray fails to acknowledge, as discussed above, that these proceedings are most accurately classified as special discovery proceedings that apply civil, not criminal, procedure. *See, e.g., In re Estate of Popp*, 641 N.E.2d 739, 744-45 (Ohio App. 8th Dist. 1994) ("R.C. 2109.50 may be quasi-criminal in nature, but the Rules of Civil Procedure as practiced in the probate court are applicable. Summary judgment, being one of the procedures available in the probate court in the adjudication of cases, may be used in an R.C. 2109.50 proceeding if all the elements apply. We hold as such because R.C. 2109.50 by its enactment is intended as a summary proceeding to recover decedent's money that is alleged to be concealed, embezzled, or conveyed away. Therefore, a requirement of all the niceties of a full criminal or civil proceeding would be inapposite to the legislative intent.").

Ohio case law is replete with examples of courts declining to treat § 2109.50 proceedings as criminal actions in service of adjacent questions of criminal or civil procedure.

For example, for the purpose of determining double jeopardy, Ohio courts do not treat § 2109.50 concealment actions as substitutes for criminal actions, and further, the statutory fine imposed on defendants under § 2109.50 does not transform such actions into criminal actions. *Harmon*, 72 N.E.3d 704. In *Harmon*, a probate court found the defendant guilty of embezzling estate assets and levied the statutory ten percent fine. *Id.* at 708. Subsequently, defendant was separately indicted on two counts of grand theft, stemming from the same act of embezzlement. *Id.* Although

12

the trial court granted the defendant's motion to dismiss the indictment, the Ohio Court of Appeals reversed the dismissal, stating that a "[p]robate [c]ourt action for concealment of assets is not a substitute for criminal proceedings." *Id.* at 709. Further, the court found that the ten percent penalty imposed in concealment proceedings does not transform such actions into criminal cases. *Id.* at 710. The court conducted a thorough analysis of the Ohio legislature's intent in passing §§ 2109.50 and 2109.52. *Id.* The court concluded that the Ohio legislature intended the statute to impose civil, rather than criminal, liability. (*Id.* at 712.) The court also held that the fine was not so punitive that §§ 2109.50 and 2109.52 imposed a criminal, rather than civil, penalty. *Id.* at 714-15 (citing *Hudson v. United States*, 522 U.S. 93, 990100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)). Thus, double jeopardy did not apply because § 2109.50 was civil in nature. *Id.*

Similarly, in *State v. Garretson*, an appellant was found guilty of embezzling estate assets following a probate court proceeding under § 2109.50 and was subsequently indicted for grand theft. *State v. Garretson*, No. CA98–03–023, 1998 WL 873004, at *1 (Ohio App. 5th Dist. Dec. 7, 1998). The appellant argued that the indictment should be dismissed because the appellant was already subjected to a "quasi-criminal proceeding" in probate court "which could have resulted in the imprisonment of Appellant and by reason thereof, double jeopardy applies to prevent the prosecution by the state." *Id.* at *2. The court of appeals rejected the appellant's argument, holding that § 2109.50 *et seq.* "do not give the probate division jurisdiction to determine guilt or innocence of a crime or to punish on a determination of guilt." *Id.*

Additionally, courts apply civil evidentiary law to §2109.50 proceedings, including permitting probate courts to draw negative inferences against parties who invoke their Fifth Amendment privileges during § 2109.50 proceedings, unlike in criminal actions. *Estate of DeChellis v. DeChellis*,

13

140 N.E.3d 1193, 1207-08 (Ohio App. 5th Dist. 2019). In *Estate of DeChellis*, the accused parties invoked their Fifth Amendment privileges while testifying in a § 2109.50 proceeding. *Id.* The probate court did not find these parties credible, partly because they invoked their Fifth Amendment rights when questioned on the disappearance of estate assets. *Id.* The Ohio Court of Appeals held that the probate court did not err when it drew its inference against the accused parties. *Id.* The court noted that "[c]ourts have applied the privilege against self-incrimination to civil proceedings," but also that "there is no impediment to drawing an inference against a party invoking the Fifth Amendment privilege *in a civil case*." *Id.* at 1207 (internal citations omitted) (emphasis added). The court remarked that, while the privilege against self-incrimination "'might be a shield in criminal cases, [ ] in civil cases it can be a sword turned against the person claiming the privilege'" and in the case of the accused, the "use of their privilege against self-incrimination acted as a sword . . . ." *Id.*

Further, no scienter is required in § 2109.50 proceedings: it is "not necessary to establish that the conveyance was made with a fraudulent or criminal intent." *Popp*, 641 N.E.2d at 743-44. "[A]lthough R.C. 2109.50 may be quasi-criminal, it does not carry all attributes of a criminal conviction but is intended to accomplish one purpose, which is to recover concealed or conveyed assets of a decedent. A requirement of scienter as anticipated in an ordinary criminal proceeding is unwarranted." *Id.* at 746.

*Popp* also made clear that defendants under § 2109.50 are not subject to misdemeanor or felony convictions and, therefore, "cannot prove a violation of either a constitutional or statutory right to a speedy trial." *Id.* The court found the defendant's argument that § 2109.50 was criminal in nature lacked merit and refused to "be dragged into appellant's insistent characterization of R.C. 2109.50 as an ordinary criminal statute, which it is not . . . ." *Id.*

14

In sum, Ohio case law does not treat § 2109.50 proceedings as criminal actions, but as civil ones. Therefore, the Court finds that proceedings under § 2109.50 are not criminal proceedings for the purposes of alleging a claim of malicious criminal prosecution under Ohio law. Gray's Complaint explicitly alleges a claim for malicious criminal prosecution, not civil. Accordingly, the Court finds that Count I of the Complaint does not set forth sufficient allegations to state a plausible claim for relief for malicious criminal prosecution under Ohio law. Defendants' Motion to Dismiss Claim I ("Malicious Prosecution") is granted.

### C. Conversion and Conspiracy for Conversion Claims (Counts II and III)

Count II of the Complaint sets forth a claim for conversion; Count III sets forth a claim for conspiracy for conversion. (Doc. No. 1 at ¶¶ 38-48.) Gray alleges that, with respect to Counts II and III, he has been damaged "in the amount of the Converted Funds, or $4,928.57." (*Id.* at ¶¶ 44, 48.)

In light of the dismissal of Claim I, the Court now turns to Defendants' Rule 12(b)(1) motion before reaching the merits of Gray's second and third claims to determine, as a threshold issue, whether this court retains jurisdiction over the remaining two claims.

In 18 U.S.C. §1332(a), "Congress 'has granted district courts original jurisdiction in civil actions between citizens of different States . . . to provide a neutral forum for what have come to be known as diversity cases . . . .'" *Everett v. Verizon Wireless*, 460 F.3d 818, 821 (6th Cir. 2006) (quoting *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 125 S.Ct. 2611, 2617, 162 L.Ed.2d 502 (2005)). To ensure federal district courts are not overrun with "minor disputes," § 1332(a) "'requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000.'" *Id.* Thus, for this Court to retain subject matter jurisdiction over Gray's second and third

15

claims, there must be complete diversity between Gray and Defendants, and the amount-in-controversy must exceed $75,000.

This Court finds that it lacks subject-matter jurisdiction over Gray's remaining second and third claims. Accepting as true Gray's allegation that he was damaged $4,928.57 upon Defendants' wrongful conversion of the spousal support check, Gray has not established the requisite amount-in-controversy to proceed under § 1332(a) diversity jurisdiction in this Court. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's Conversion and Conspiracy for Conversion claims as set forth in Counts II and III.

### V. Conclusion

Accordingly, and for all the reasons set forth above, Plaintiff's Motion for Default Judgment (Doc. No. 8) is DENIED. Defendants' Motion to Dismiss (Doc. No. 3) is GRANTED.

As to those claims which are dismissed, the dismissal is without prejudice in light of the "well-established preference for allowing claims to be decided on their merits when possible." *See Burkeen v. A.R.E. Accessories, LLC,* 758 Fed. Appx. 412, 416 (6th Cir. Dec. 17, 2018).

**IT IS SO ORDERED.**

Date: August 31, 2020

   *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE